1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIG INSURANCE COMPANY
     OF MICHIGAN,
11
                    Plaintiff,
12
              vs.                                     CIV-S-05-0492-MCE GGH
13
     VISION SERVICE PLAN,
14   et al.,
                    Defendants.              ORDER
15   _____/

16              On December 22, 2005, the parties, by and through their counsel, were heard in

17   connection with TIG's motion to compel production of documents.  Chip Cox appeared by

18   telephone on behalf of TIG.  David Wood appeared for defendants.

19   _Introduction and Summary_

20              On November 29, 2005, this court held a telephone conference regarding TIG's

21   motion which was originally scheduled to be heard on December 8, 2005.  At that time, the court

22   ordered defendants to produce documents from the underlying litigation, not subject to dispute,

23   which were located in their offices on December 2, 2005, and to produce documents not

24   currently in their offices by December 13, 2005.  At that time, the hearing on plaintiff's motion to

25   compel was continued to December 22, 2005.

26   \\\\\

1

1  *Facts*

2          Defendants are Vision Service Plan and its subsidiaries ("VSP"), and Altair

3  Eyewear, Inc.  TIG issued an insurance liability policy to VSP with an effective date of January

4  9, 2002, which was cancelled by VSP effective November 18, 2002.  Defendants claim that

5  TIG's policy covers them in underlying litigation, <u>Aspex Eyewear, Inc. v. Altair Eyewear, Inc.</u>, a

6  patent infringement action in New York.  Defendants' costs of defending this action are more

7  than $700,000, according to TIG and close to $1 million according to defendants.  TIG alleges

8  that the underlying action began when Aspex wrote a letter to Altair, alleging patent infringement

9  in July, 2001, followed by another letter in September, 2001.  Because the policy at issue is a

10 "claims made" policy, TIG contends that it only provides coverage for claims first made during

11 the policy period.  TIG contends these demand letters were made before the policy was issued.

12 TIG additionally claims that when VSP applied for a policy in January, 2002, it denied any

13 previously asserted claims.  Based on what TIG asserts are these material misrepresentations, it

14 issued the policy to VSP.  Aspex filed an action against Altair in August, 2002.  TIG originally

15 declined coverage for the Aspex litigation but then later agreed to defend Altair under a

16 reservation of rights.

17          TIG filed the instant action to rescind the policy and declare that it does not cover

18 the Aspex litigation.  On August 17, 2005, defendants responded to the instant discovery

19 requests.  It was in early November, 2005 that defendants discovered further pre-August, 2002

20 documents and transmitted a privilege log to TIG on November 10, 2005.

21          Defendants assert that TIG's application for its policy was vague and ambiguous,

22 and VSP did not understand that TSP's questions concerned "claims" like those contained in the

23 two Aspex letters.  They deny any material misrepresentations on the basis that Aspex's July and

24 September, 2001 letters to Altair do not constitute claims, that defendants regularly receive

25 numerous frivolous demand letters, that Altair responded that they were not infringing, to which

26 Aspex did not respond until ten months later, leading Altair to believe the matter was laid to rest

1  and not necessary to disclose to its insurer.

2  *Discussion*

3          The document request remaining at issue is number 7 which requests "all

4  documents that examine, consider, review, refer or relate to any patents or intellectual property of

5  Aspex Eyewear."

6          The parties now agree that documents generated after the complaint in Aspex was

7  served on defendants are not sought by TIG.  Remaining at issue are documents listed in

8  defendants' November 8, 2005 privilege log which precede August, 2002, the date the underlying

9  litigation was filed.  Exhibit A to Joint Statement.

10          TIG argues that defendants waived any privilege, based on various theories,

11  including that defendants' production of these documents to Aspex in the underlying litigation

12  constituted a waiver.  Defendants claim that their disclosure to Aspex does not waive the

13  privilege because it was a selective waiver to prove its defense of non-willful infringement, and

14  that this disclosure was reasonably necessary to accomplish the purpose for which Davis Wright

15  and Tremaine was consulted, to establish this defense.  Therefore, defendants argue, disclosure to

16  Aspex does not constitute a waiver as to TIG.

17  I.  Choice of Law

18          Because the subject matter jurisdiction for this action is based on diversity of

19  citizenship, the court must ascertain the appropriate law, federal or California, for discussion of

20  the issues.   In this diversity action, questions of substantive privilege are governed by state law.

21  Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993).[1]  See also First Pacific

22  Networks, Inc. v. Atlantic Mutual Ins. Co., 163 F.R.D. 574, 576 (N.D. Cal. 1995); Bank of the

23  West v. Valley Nat'l Bank of Ariz., 132 F.R.D. 250, 251 (N.D. Cal. 1990).  However, matters

24  

25          [1]  Despite the observations in a few cases that Pagano had been implicitly overruled by
the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling
26  ever took place.

3

1  going to the procedure for invocation of such privilege, e.g., preparation of privilege logs, are

2  entirely federal in nature.  Eureka Financial Corp v. Hartford Acc. & Indem. Co. 136 F.R.D. 179,

3  182; see Fed. R. Civ. P. 26 (b)(5).

4          In this diversity case arising out of an insurance claim made under state law, the

5  court must apply the state law of attorney-client privilege.  First Pacific Networks, Inc. v.

6  Atlantic Mutual Ins. Co., 163 F.R.D. 576, 576 (N.D. Cal. 1995); Bank of the West v. Valley

7  Nat'l Bank of Ariz., 132 F.R.D. 250, 251 (N.D. Cal. 1990); Connolly Data Systems, Inc. v.

8  Victor Technologies, Inc., 114 F.R.D. 89, 91 (S.D. Cal. 1987); see Platypus Wear, Inc. v. K.D.

9  Co., Inc., 905 F. Supp. 808, 832 (S.D. Cal. 1995) (applying state privilege law in diversity action

10  to evidence applicable to state law claims); Marvin Lumber v. PPG Industries, 168 F.R.D. 641,

11  644 (D.C. Minn. 1996) (applying Minnesota law of attorney-client privilege in diversity case).

12  Accordingly, the court will apply the attorney-client privilege law of California.

13          First, privileges under California law are narrowly construed as their invocation

14  tends to impair the search for the truth.  McKesson HBOC, Inc v. Superior Court, 115 Cal. App.

15  4th, 1236, 9 Cal. Rptr. 3d 812, 817 (2004).  In California, communications between a lawyer and

16  client which are intended to be confidential are protected from disclosure.  Cal. Evid. Code §

17  952.

18          As used in this article, "confidential communication between client
        and lawyer" means information transmitted between a client and
19        his or her lawyer in the course of that relationship and in
        confidence by a means which, so far as the client is aware,
20        discloses the information to no third persons other than those who
        are present to further the interest of the client in the consultation or
21        those to whom disclosure is reasonably necessary for the
        transmission of the information or the accomplishment of the
22        purpose for which the lawyer is consulted, and includes a legal
        opinion formed and the advice given by the lawyer in the course of
23        that relationship.

24          The party claiming a privilege shoulders the burden of showing that the evidence

25  it seeks to suppress falls within the terms of an applicable statute.  HLC Properties, Ltd. v.

26  Superior Court, 35 Cal. 4th 54, 59, 24 Cal. Rptr. 3d 199, 202 (2005).  For example, the party

1  claiming the privilege has the burden to establish that the information was transmitted in the

2  course of professional employment.  Witkin, <u>California Evidence</u>, § 1125 (Third Ed.).  However,

3  once that initial burden is met, the party attacking maintenance of the privilege has the burden to

4  rebut the presumption of confidentiality.  Cal. Evid. Code § 917.

5  II.  <u>Waiver</u>

6        California law has two separate statutory sections pertinent to the issue of waiver

7  of attorney-client privilege.  The attorney-client privilege protects confidential communications

8  which "disclose[] the information to no third persons other than those who are present to further

9  the interest of the client in the consultation or those to whom disclosure is reasonably necessary

10  for the transmission of the information or the accomplishment of the purpose for which the

11  lawyer is consulted."  Cal. Evid. Code § 952.  However, waiver of the privilege is also defined in

12  Cal. Evid. Code § 912:

13          a) Except as otherwise provided in this section, the right of any
        person to claim a privilege provided by Section 954 (lawyer-client

14          privilege), 980 (privilege for confidential marital communications),
        994 (physician-patient privilege), 1014 (psychotherapist-patient

15          privilege), 1033 (privilege of penitent), 1034 (privilege of
        clergyman), 1035.8 (sexual assault counselor-victim privilege), or

16          1037.5 (domestic violence counselor-victim privilege) is waived
        with respect to a communication protected by the privilege if any

17          holder of the privilege, without coercion, has disclosed a
        significant part of the communication or has consented to

18          disclosure made by anyone. Consent to disclosure is manifested by
        any statement or other conduct of the holder of the privilege

19          indicating consent to the disclosure, including failure to claim the
        privilege in any proceeding in which the holder has the legal

20          standing and opportunity to claim the privilege.

21                          ****

22          (c) A disclosure that is itself privileged is not a waiver of any
        privilege.

23          (d) A disclosure in confidence of a communication that is protected
        by a privilege provided by Section 954 (lawyer-client privilege),

24          994 (physician- patient privilege), 1014 (psychotherapist-patient
        privilege), 1035.8 (sexual assault counselor-victim privilege), or

25          1037.5 (domestic violence counselor-victim privilege), when
        disclosure is reasonably necessary for the accomplishment of the

26          purpose for which the lawyer, physician, psychotherapist, sexual

1    assault counselor, or domestic violence counselor was consulted, is
2    not a waiver of the privilege.

3    <u>Disclosure to an Adverse Party</u>

4    At hearing after some discussion, counsel for both parties represented that

5 "substantially" all documents at issue in the instant motion were previously produced to Aspex in

6 the underlying litigation subject to a protective order.  The parties did not identify any disputed

7 documents herein which were not previously disclosed.  Therefore, for purposes of this motion,

8 this court finds that *all* documents which are the subject of this motion were previously produced

9 to Aspex.  <u>See</u> Joint Statement, Exhs. B and C.

10    Where a party produces otherwise privileged documents to an adversary, it waives

11 the privilege as to other adversaries.  <u>McKesson HBOC, Inc. v. Superior Court</u>, 115 Cal. App.4th

12 1229, 1236, 9 Cal. Rptr. 3d 812, 817 (2004).  McKesson had established an internal review for

13 accounting irregularities, and some of the information generated from such was considered to be

14 privileged information.  Several private lawsuits were filed against McKesson on account of the

15 accounting problems as well as the commencement of an investigation by the federal

16 government.  McKesson decided to give its internal review information to the federal

17 government.  The plaintiffs in the private lawsuit demanded the internal review documents as

18 they argued any privilege had been waived by disclosure to the federal agencies involved.  The

19 trial court agreed.  The appellate court rejected McKesson's argument that it had disclosed

20 privileged materials to the government on the basis that such "disclosure was reasonably

21 necessary to accomplish the purpose for which the attorneys were consulted."  <u>Id.</u> at 1237, 818,

22 citing <u>Raytheon Co. v. Superior Court</u>, 208 Cal. App. 3d 683, 256 Cal. Rptr. 425 (1989).

23 <u>McKesson</u> construed <u>Raytheon</u> to suggest that parties who are aligned on the same side of an

24 investigation, but are nonetheless adversaries because they may try to shift blame on each other,

25 may share privileged information without waiving it under some circumstances.  The <u>McKesson</u>

26 court distinguished the <u>Raytheon</u> targets and explained that there was no true alignment of

1   interests between an entity under investigation by the government for securities laws violations

2   and the government, even though the entity was attempting to root out the source of accounting

3   improprieties.  Id. at 1238, 818.  The court explained, "no one suggests that a defendant facing

4   multiple plaintiffs should be able to disclose privileged materials to one plaintiff without waiving

5   the attorney-client privilege as to the other plaintiffs."  Id.  In other words, the "reasonably

6   necessary to accomplish the purpose" doctrine of non-waiver does not extend to adversarial

7   disclosures.

8          The exception to waiver based on a reasonable necessity for counsel to

9   accomplish the purpose for which it was consulted does not apply to documents disclosed by

10  Altair to its adversary, Apex.  There is no suggestion that these two parties were aligned in any

11  manner and Raytheon is therefore distinguishable, based on the same reasons cited in the

12  McKesson case.  Nor is it significant that the documents in this case disclosed to Apex were

13  required by normal discovery to be disclosed because Altair chose to assert an advice of counsel

14  defense.  Whether one voluntarily attempts to ward off the government by voluntary disclosure of

15  privileged information, or one voluntarily chooses to defend itself in actual litigation by assertion

16  of a defense with concomitant disclosure requirements, the fact remains that the privileged

17  information was chosen to be disclosed to better one's legal position.  In both situations, the pros

18  and cons of disclosure are weighed against the benefit of bettering one's legal position.  And,

19  when that disclosure is made to an active or potential adversary, the privilege is waived.

20         Finally, the mere act of attempting to insulate the privileged disclosure from

21  further disclosure by way of protective order or agreement cannot be held to avoid a waiver.

22  Generally, such self-help action is ineffective to relieve one of the consequences of his actions

23  vis-a-vis third parties, and the result is no different here.  Invocation of the advice of counsel

24  defense is not painless, see Chiron v. Genentech, 179 F. Supp. 2d 1182 (E.D. Cal. 2001), and the

25  disclosure consequences with respect to third party rights cannot be stipulated away by the initial

26  beneficiaries of disclosure.

1    Because the court finds that defendants waived the privilege by producing

2    documents to Aspex, it will not address alternative theories of waiver.

3    *Conclusion*

4    Accordingly, IT IS ORDERED that plaintiff's motion to compel, filed November

5    9, 2005, is granted.  Defendants shall produce the subject documents within fifteen days of this

6    order.

7    DATED: 1/4/06

8    /s/ Gregory G. Hollows

9    _____
     GREGORY G. HOLLOWS
     U. S. MAGISTRATE JUDGE

10   GGH/076
     TIG0492.dct.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

8